UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------x

PHILIP BALDESSARRE and VALENTINA BALDESSARRE, on behalf of their minor son, DANIEL BALDESSARRE,

Plaintiffs,

vs.

MONROE-WOODBURY CENTRAL SCHOOL DISTRICT, ALETHEA SCHEPPERLY and CLAIRE NALICK, in their official capacities,

Defendant.

---------------------------------------------------------------x

Case No. 10 CIV.2594 (KMK-PED)

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION**

Michael H. Sussman [3497]
*Law Offices of Sussman & Watkins*
55 Main Street, Suite 6
Goshen, NY 10924

Mary Jo Whateley [9535]
*Legal Services of the Hudson Valley*
123 Grand Street
Newburgh, NY 12550

*Attorneys for Plaintiff*

## PRELIMINARY STATEMENT

Plaintiffs submit this memorandum of law in partial opposition to defendants' Rule 56 motion[1] seeking dismissal of the complaint in its entirety.[2] Defendants' sole argument in support of such dismissal is that, in defendants' view, prior to bringing the within discrimination action in federal Court, plaintiffs should have first exhausted administrative remedies and did not.

Plaintiffs respectfully submit that defendants motion should be denied. Plaintiffs have asserted facts which, when taken as true, constitute an exception to the exhaustion doctrine. As set forth *infra,* dismissal of defendants' motion is warranted - whether the Court treats defendants' motion as one for summary judgment or to dismiss under Rule 12(b)(1).

Secondly, defendants seek dismissal of the claims against defendants Nalick and Schepperly.[3] Defendants seek dismissal of the claims against the individuals defendants on one

---

1

Defendant has captioned its motion as one for "summary judgment"; however, as defendants acknowledge, the Court has not given them permission to submit a Rule 56 motion, nor had they sought permission to make such a motion as required by Rule II(A) of the Individual Rules of Practice of Judge Kenneth M. Karas. Rather, defendants made application to the Court for permission to file a Rule 12(b) motion to dismiss, which the Court granted. Since submission of a Rule 56 motion is contrary to the Court's directive, and since there has been no opportunity for discovery, Plaintiffs respectfully vehemently oppose the Court's acceptance of defendants' motion as one for summary judgment.

2

Although defendants have not raised "lack of subject matter jurisdiction" as an affirmative defense, defendants deny that this Court has subject matter jurisdiction based on failure to exhaust. *(Def. Ex. "C", Para 5).*

3

Although raised as an affirmative defense in its original Answer *(Def., Ex "E", p. 6)*, defendants have failed to include in their Amended Complaint the affirmative defense of "improper parties" *(Def. Ex. "C").*

of two bases: either because [1] the Court may not grant plaintiffs' prayer for injunctive relief against these defendants as injury is not likely to re-occur or [2] thee claims against the individual defendants are "wholly redundant" in relation to plaintiffs' claims against the defendant district. (Def. MOL, p.12).

For the reasons set forth, *infra,* Plaintiffs respectfully oppose the Court's dismissal of the claims against either defendant, Nalick or Schepperly.

## STATEMENT OF FACTS

## LEGAL STANDARD

Section 1415(1) of the IDEA makes it clear that the statute does not provide the exclusive remedy for claims alleging violations of federal rights of children with disabilities. The language of the provision, incorporated into the regulations, reads as follows:

> "Nothing in this part restricts or limits the rights procedures, and remedies available under the Constitution, the Americans with Disabilities Act of 1990, Title V of the Rehabilitation Act of 1973, or other Federal laws protecting the rights of children with disabilities ..." *34 CFR 300.516(e).*

Section 504 provides:

> "No otherwise qualified individual with a disability .. shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving federal financial assistance. *29 U.S.C. 794.*

Similarly, Title II of the ADA states:

> "No qualified individual with a disability shall, by reason of such disability, be excluded from the participation in - or be denied the benefits of - the services, programs or activities of a public entity, or be subjected to discrimination by such entity." *42 U.S.C. 12134.*

The United States Supreme Court has noted that:

> Discrimination against the handicapped was perceived by Congress to be

> most often the product, not of invidious *animus*, but rather of thoughtlessness and indifference – of benign neglect." *Alexander v. Choate,* 105 S.Ct. 72, 717 (1985).

Section 504 of the Rehabilitation Act and Title II of the ADA were designed to protect disabled persons from discrimination, both intentional and unintentional, in the provision of public services. *Weixel v. Bd. Of Education,* 287 F.3d 138, 146 (2nd Cir. 2002). A plaintiff may recover money damages under the ADA or Section 504 by showing a statutory violation resulted from "deliberate indifference" to the rights secured the disabled by these statutes. *Garcia v. S.U.N.Y. Health Sciences Center of Brooklyn,* 280 F.3d 98 (2nd Cir. 2001) (citing, *Bartlett v. New York State Bd. Of Law Examiners,* 156 F.3d 321, 331 (2nd Cir. 1998), *vacated on other grounds,* 527 U.S. 1031 (1999).

Resolution of IDEA claims does not absolve defendant of liabilities for failures under Title II and Section 504. *K.M. v. Hyde Park Central School District,* 381 F. Supp. 2d 343 (S.D.N.Y. 2005); See, *Gabel v. Bd. Of Educ. of Hyde Park Central Sch. Dist.,* 368 F. Supp. 2d 313, 336 (S.D.N.Y. 2005). The claims here accrued at a certain point in time. The alleged violations, if proven, would entitle plaintiffs to money damages. That later events may or may not have improved the child's status is irrelevant to the legal saliency of the underlying discrimination claims. Defendants' argument is tantamount to the suggestion that a person who has sued for failure to promote due to gender loses her claim when she is promoted years later or even months later. This is obviously not the law: the earlier arising action still can predicate money relief for the time in which the discrimination was effective. Likewise, here, the school district has removed the minor from the offending teacher's grasp and abandoned its attempts to remove him from district schools, as is alleged in the Amended Complaint.

## LEGAL ARGUMENT

## POINT I

### PLAINTIFFS' COMPLAINT CONTAINS FACTS SUFFICIENT TO CONSTITUTE AN EXCEPTION TO THE EXHAUSTION DOCTRINE AND THUS WITHSTAND DISMISSAL UNDER R 12(b)(1).

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Shomo v. City of New York*, 2009 U.S. App. LEXIS 23076 (2nd Cir. 2009), citing, *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (quoting, *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)).

Here, defendants argue that dismissal of plaintiffs amended complaint is warranted - and that this Court lacks subject matter jurisdiction because plaintiffs had a duty to exhaust administrative remedies and did not. (Def. Brief, p. 5-10; Ex. "C", Para 5).

Under the IDEA, parents who are dissatisfied with an IEP developed for their child by the local school district may file a complaint about "any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child ... ." *20 U.S.C. § 1415(b)(1).*

In New York, prior to seeking review in federal or state court, an aggrieved parent must first seek review of an IEP in a due process hearing with an impartial hearing officer ("IHO"). See, *20 U.S.C. § 1415(f); 8 N.Y.C.R.R. § 200.5(i)-(j).* Second, any party who disputes the IHO's findings must appeal to a state review officer ("SRO") of the State Education Department. *20 U.S.C. § 1415(g); 8 N.Y.C.R.R. § 200.5(k).*

Exhaustion of administrative remedies ensures that disputes regarding IEPs for disabled

children are originally handled by administrators with expertise and experience in the area, allegedly enabling to resolve grievances promptly. *See J.S. ex rel. N.S. v. Attica Cent. Sch.*, 386 F.3d 107, 112 (2d Cir. 2004); *Bd. of Educ. v. Rowley,* 458 U.S. 176, 206 (1982). In reviewing administrative proceedings, the federal court must limit its review to determining whether the state complied with the IDEA's procedures and **whether the IEP is "reasonably calculated to enable the child to receive educational benefits."** *Id.* at 207. (Emphasis added.)

The exhaustion requirement also applies where plaintiffs seek relief under other federal statutes when such relief is also available under the IDEA. *J.S.*, 386 F.3d at 112. As a result, the exhaustion requirement encompasses, and therefore precludes the court from reviewing in the first instance, any claims arising under § 1983, § 504, or the ADA that can be remedied by resolving the IDEA claims. See, e.g., *Hope v. Cortines,* 872 F. Supp. 14 (E.D.N.Y. 1995), *aff'd,* 69 F.3d 687 (2d Cir. 1995); *J.S.*, 386 F.3d at 112.

However, the Supreme Court has recognized that exhaustion of administrative remedies may be excused "where exhaustion would be futile or inadequate." *Honig v. Doe,* 484 U.S. 305, 327, 108 S. Ct. 592, 98 L. Ed. 2d 686 (1988). Further, the IDEA's legislative history identifies three situations in which it is not appropriate to require the use of due process and review procedures set out in [20 U.S.C. § 1415(b) and ©] of the [IDEA] before filing a law suit. These include complaints where: (1) it would be futile to use the due process procedures . . . , (2) an agency has adopted a policy or pursued a practice of general applicability that is contrary to the law; [and] (3) it is improbable that adequate relief can be obtained by pursuing administrative

remedies (e.g., the hearing officer lacks the authority to grant the relief sought). *H.R. Rep. No. 296, 99th Cong., 1st Sess. 7 (1985).*

In Heldman, the Second Circuit effectively collapsed (2) and (3) above into futility exception listed as (1) above: "The policies underlying the exhaustion requirement do not come into play . . . when pursuit of administrative remedies would be *futile* because the agency either **was acting in violation of the law** or was unable to remedy the alleged injury." 962 F.2d at 159 (emphasis added).

Here, in support of their argument that the court should dismiss the complaint in its entirety for failure to exhaust, defendant relies heavily on the Court's analysis in *Polera v. Bd. of Educ.,* 288 F.3d 478, 48 (2nd Cir. 2002) (Def. Brief, pp. 5, 6, 10).

It is respectfully submitted that the factual distinctions between *Polara* and the instant complaint render that holding inapposite here. Importantly, in *Polera,* the Second Circuit confirmed that monetary damages are not available under the IDEA and that the plain language of the IDEA relieves a plaintiff from the obligation to exhaust administrative remedies when those remedies are insufficient to fully address a plaintiff's claims.

Notwithstanding its acknowledgement of a plaintiff's right not to exhaust when to do so would be futile, the Second Circuit nevertheless rejected plaintiff's argument that exhaustion was "futile", because it found, in essence, that plaintiff's complaint was a "sham" and that including a prayer for damages in the *ad damnum* clause in a complaint that clearly was seeking IDEA relief would not relieve a plaintiff of its obligation to exhaust. Specifically, the Court held:

> "We agree with the prevailing opinion of the other Circuits and the district courts in our Circuit. The purpose of the IDEA is to provide educational services, not compensation for personal injury,

> and a damages remedy – as contrasted with reimbursement of expenses – is fundamentally inconsistent with this goal. The availability of damages also would undercut the IDEA's carefully structured procedure for administrative remedies, a mechanism that encourages parents to seek relief at the time that a deficiency occurs and that allows the educational system to bring its expertise to bear in correcting its own mistakes. We therefore hold that monetary damages are not available under the IDEA. However, as discussed below, we do not believe that this holding leads inexorably to the conclusion that because Polera seeks relief that is not available under the IDEA, she was not required to exhaust her administrative remedies. *Id.,* at 486.
>
> The Court further opined:
>
> Courts in the Second Circuit have required exhaustion of administrative remedies even where damages were held to be unavailable through the administrative process. <u>In such cases, plaintiffs were not permitted to evade the IDEA's exhaustion requirement merely by tacking on a request for money damages</u>. *Id.,* at 487 (emphasis added).

The Second Circuit and the Southern District have consistently held that, while damages are <u>not</u> available under the IDEA, a prayer for damages – or other artful drafting – does not enable a plaintiff to 'sidestep the exhaustion requirement of the IDEA'. *Cave v. East Meadow Union Free School District,* 514 F.3d 240 (2nd Cir. 2008); *Polera v. Bd. Of Educ.,* 288 F.3d 478, 48 (2nd Cir. 2002); *Hope v. Cortines,* 872 F. Supp. 14, 17 (E.D.N.Y.) (a plaintiff "cannot escape IDEA's exhaustion requirement by drafting a complaint artfully avoiding an IDEA claim where IDEA offers the very relief they seek"), *aff'd,* 69 F.3d 687 (2nd Cir. 1995); *"BD" v. DeBuono,* 130 F. Supp. 2d 401, 428 (S.D.N.Y. 2000).

In determining whether dismissal of a federal action is warranted in cases where a plaintiff does not first exhaust administrative remedies, the Second Circuit's analysis in *Levine v. Greece Central School District,* 53 IDELR 212, 109 LRP 72517 (2nd Cir. 2009) is most instructive:

> "A plaintiff is excused from the IDEA's exhaustion requirement if he **proves** that "it would be futile to resort to the IDEA's due process procedures." *Murphy v. Arlington Cent. Sch. Dist. Bd. of Educ.*, 297 F.3d 195, 199 (2d Cir. 2002). "[A] plaintiff must demonstrate that 'adequate remedies are not reasonably available,' *Coleman*, 503 F.3d at 205 (*quoting*, *J.G. by Mrs. G. v. Bd. of Educ.*, 830 F.2d 444, 447 (2d Cir. 1987)), "or that 'the wrongs alleged could not or would not have been corrected by resort to the administrative hearing process.' Id. (*quoting*, *Heldman v. Sobol*, 962 F.2d 48, 158 (2d Cir. 1992)). The party seeking to be excused from the exhaustion requirement **bears the burden of proving** futility. *Polera v. Bd. of Educ.*, 288 F.3d 478, 488 n.8 (2d Cir. 2002). (Emphasis added.)
>
> **None of the grounds for futility asserted by Levine are supported by the complaint**. First, Levine argues that Merkey's statement to his parents constituted action by the defendants that caused the Levines not to exhaust the available administrative remedies. Although we have suggested that parents who are denied the opportunity by the school district to pursue administrative remedies are not subject to the IDEA's exhaustion requirement, see, e.g., J.G., 830 F.2d at 447, the complaint here alleges nothing to suggest that Defendants took any action that prevented the Levines from seeking an impartial hearing. Moreover, it is undisputed that the Levines received Procedural Safeguards Notices from the District informing them of the availability of such remedies. Compl. ¶¶ 61-62. For the same reasons that Merkey's statement does not estop the District Defendants from asserting a failure-to-exhaust argument, we conclude that the statement also does not amount to an action that prevented the Levines from seeking further review in late 2005 when it was made, or at any point thereafter.
>
> We conclude that, even if failure to exhaust administrative remedies under the IDEA does not divest the federal courts of subject matter jurisdiction, **Levine's complaint contains no allegations sufficient to demonstrate that his failure to comply with this mandatory statutory requirement should be excused**. We have considered Levine's remaining arguments and find them to be without merit.
>
> [emphases added].

Unlike the plaintiffs in the cases cited *supra,* here, plaintiffs' complaint alleges facts sufficient to state claims for discrimination under both Section 504 and Title II of the ADA,[4] such that the relief they seek, including damages, is appropriate and, unlike *Polera* and similar cases cited *supra,* not merely "artfully drafted" sham pleadings.

---

[4] Both Section 504 and Title II of the ADA require the same elements of proof and therefore Courts have held that they may be analyzed together.

Here, plaintiffs painstaking detail the acts of intentional discrimination and deliberate indifference exhibited by defendants, whose apparent ultimate goal was to label Daniel "Emotionally Disturbed", remove him from the general education setting and relegate him to a segregated out-of-district placement - simply because his teacher, defendant Nalick, was unwilling to accommodate his disability. (*See, Amended Complaint, Paras. 18, 32, 34, 35, 36, 37, 38, 39, 40.).* This discriminatory *animus* is confirmed by the comments and suggestions made to the parents by the defendant District's CSE chairperson, Eric Eulau, when - on January 8, 2010 - he acknowledged to Daniel's mother that the staff was tainted against Daniel and that she should consider placing Daniel in a class with a different teacher. (*Amended Complaint, Paras. 34, 35, 36).*

The complaint sufficiently alleges these acts of intentional discrimination and, further, sufficiently alleges the reasons why exhaustion is not required. Thus, dismissal under 12(b)(1) or (6) is not warranted.

The allegations of the amended complaint, as enumerated above, clearly met the pleading requirements of *Shomo and Iqbal, supra.* Thus, the Court should deny defendants' motion and permit plaintiffs to proceed with their lawsuit against the named defendants.[5]

## II. PLAINTIFFS' CLAIMS AGAINST SCHEPPERLY ARE VIABLE

Plaintiffs concede that it is remote that their son will have further contact with his prior

---

[5] As set forth above, plaintiffs have alleged material facts which, when taken as true, constitute an exception to the exhaustion doctrine. Since defendants have denied these allegations (Amended Answer, Paras. ______), they constitute disputed material facts, rendering summary judgment inappropriate on the issue of exhaustion and entitling plaintiffs the opportunity to prove their claims at trial.

teacher, defendant Nalick, and for that reason, agree to voluntarily dismiss her from the case. However, the same logic cuts the other way for defendant Schepperly. She has continuing control of the special education program and has both condoned and coordinated discriminatory district action against DB. For this reason and because the chance of such ongoing contact is very high, injunctive relief against her is necessary and she should not be dismissed as an individual defendant.

## CONCLUSION

The defendant district's motion and that on behalf of Schepperly should be denied while defendant Nalick should be dismissed from the suit as injunctive relief against her is most likely not required.

Respectfully submitted,

Michael H. Sussman [3497]
*Law Offices of Sussman & Watkins*
55 Main Street, Suite 6
Goshen, NY 10924

Mary Jo Whateley [9535]
*Legal Services of the Hudson Valley*
123 Grand Street
Newburgh, NY 12550

*Attorneys for Plaintiff*

Dated: 10/8/10

**SUSSMAN & WATKINS**
**55 Main Street—Suite 6**
**PO BOX 1005**
**GOSHEN, NY 10924**
**Phone (845) 294-3991**
**Fax (845) 294-1623**
**Email sussman1@frontiernet.net**
**chris_sussman1@frontiernet.net**

## FAX COVER SHEET

This message is intended only for the use of the below named recipients. It may concern information that is privileged, confidential and exempt from disclosure. If you have received this message by mistake or error, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited. If you are not the intended recipient, please notify us immediately by telephone and return the original message to us by mail. Thank you.

DATE: 10/12/10

NUMBER OF PAGES: 2 (including cover sheet)

**TRANSMITTED TO:**

Name: Mr. Drohan Fax #: 227-6873

Name: Fax #:

Name: Fax #:

Name: Fax #:

A copy of this document

______ WILL __X__ WILL NOT be sent via mail.

**NOTES:**

Re Baldessarre v. Monroe Woodbury