UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

PHILIP BALDESSARRE, and VALENTINA
BALDESSARRE, on behalf of their minor son,
DANIEL BALDESSARRE,

                         Plaintiffs,

    -v-

MONROE-WOODBURY CENTRAL SCHOOL
DISTRICT, ALTHEA SCHEPPERLY, and CLAIRE
NALICK, IN THEIR OFFICIAL CAPACITIES,

                         Defendants.

Case No. 10-CV-2594 (KMK)

OPINION AND ORDER

---

Appearances:

Mary Jo Whateley, Esq.
Legal Services of the Hudson Valley
Newburgh, New York
*Counsel for Plaintiffs*

Michael H. Sussman, Esq.
Sussman & Watkins
Goshen, New York
*Counsel for Plaintiffs*

James P. Drohan, Esq.
Donoghue, Thomas, Auslander & Drohan, LLP
Hopewell Junction, New York
*Counsel for Defendants*

KENNETH M. KARAS, District Judge:

       Philip and Valentina Baldessarre (collectively, "Plaintiffs") are the parents of Daniel

Baldessarre ("Daniel"), a child in the Monroe-Woodbury Central School District ("the District")

with a diagnosed disability.[1]  Plaintiffs have sued the District, Daniel's former teacher, Claire

Nalick ("Nalick"), and the District's Director of Pupil Personnel Services, Althea Schepperly

("Schepperly") (collectively, "Defendants"), asserting claims under Section 504 of the

Rehabilitation Act of 1973 ("Section 504" or "Rehabilitation Act"), 29 U.S.C. § 701 *et seq.*, and

the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.*  Nalick and Schepperly

are sued only in their official capacities.  Plaintiffs allege that Defendants discriminated against

Daniel because of his disability when he was in kindergarten.  Pending before the Court is

Defendants' motion for summary judgment, which the Court is treating as a motion to dismiss

for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1), or in

the alternative, as a motion for judgment on the pleadings pursuant to Federal Rule of Civil

Procedure 12(c).  (Dkt. No. 14.)[2]  Defendants argue that the Amended Complaint should be

---

[1] Although Daniel is a minor, the Amended Complaint and Plaintiffs' Memorandum of Law use his full name, so the Court will as well.

[2] After the Parties appeared before the Court at a pre-motion conference on July 14, 2010, the Court issued a scheduling order for Defendants' proposed motion for judgment on the pleadings.  (Dkt. No. 11.)  However, Defendants instead filed the instant motion for summary judgment pursuant to Federal Rule of Civil Procedure 56, maintaining that at the July 14th conference, the Court had indicated that "if there were matters outside the scope of the pleadings (specifically as to whether Plaintiffs had indeed exhausted their administrative remedies) it could convert the motion for judgment on the pleading [sic] to one for summary judgment."  (Defs.' Mem. of Law in Supp. of Mot. for Summ. J. Pursuant to Rule 56 ("Defs.' Mem.") 1 n.1.)  Defendants further request that because counsel for both Parties advised the Court of matters outside the Complaint at the July 14th conference, the Court convert the instant motion to a Rule 56 motion "so that the parties' discussions with the Court may become part of the record."  (Reply Aff. ¶ 3.)  Defendants acknowledge that there is no transcript of the conference.  (*Id.* n.1.)  In support of their motion, Defendants submitted evidence outside the pleadings — namely, an Affidavit from the Director of Special Education for the District, Eric Eulau (the "Eulau Affidavit") and an Individualized Education Program ("IEP") for Daniel for the 2010-2011 school year, dated June 9, 2010 (the "2010-2011 IEP").

The Court declines to consider a motion for summary judgment at this stage, and instead will treat the current motion as either a Rule 12(b)(1) motion because the Court's subject matter jurisdiction has been implicated — and a challenge to the Court's subject matter jurisdiction may

dismissed because Plaintiffs failed to exhaust their administrative remedies under the Individuals

with Disabilities Education Act ("IDEA") and that the claims against Nalick and Schepperly

should be dismissed for failure to state a claim.  Plaintiffs argue that their claims fall within an

exception to the IDEA exhaustion doctrine and thus exhaustion of administrative remedies was

not required.  Plaintiffs also maintain that their claims against Schepperly are viable, but agree

that Nalick should be dismissed from the case.  For the reasons stated herein, Defendants'

motion is granted.

## I.  Background

The Court assumes the following facts, as alleged in the Amended Complaint, to be true

for purposes of this motion.

### A.  Facts

Daniel has been diagnosed with a speech impairment.  (Am. Compl. ¶ 8.)  When Daniel

---

be raised at any point in the proceeding, including sua sponte by the Court, *see, e.g.*, *McGinty v. New York*, 251 F.3d 84, 90 (2d Cir. 2001) — or as a Rule 12(c) motion for judgment on the pleadings.  Summary judgment is inappropriate because the Parties have not conducted any discovery.  "The Second Circuit has held that summary judgment should only be granted if after discovery, the nonmoving party has failed to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof" and, thus, "[s]ummary judgment is strongly disfavored prior to the parties having had an adequate opportunity for discovery." *Indergit v. Rite Aid Corp.*, No. 08-CV-9361, 2010 WL 1327242, at *3 (S.D.N.Y. Mar. 31, 2010) (alterations and internal quotation marks omitted); *see also Hellstrom v. U.S. Dep't of Veterans Affairs*, 201 F.3d 94, 97 (2d Cir. 2000) ("Only in the rarest of cases may summary judgment be granted against a plaintiff who has not been afforded the opportunity to conduct discovery.").
As further explained below, however, because the Court has considered whether it has subject matter jurisdiction over Plaintiffs' claims under Rule 12(b)(1), the Court will still consider the Eulau Affidavit and the 2010-2011 IEP submitted by Defendants to the extent that these documents relate to the subject matter jurisdiction of the Court.  *See Picture Patents, LLC v. Aeropostale, Inc.*, No. 07-CV-5567, 2011 WL 1496347, at *4 (S.D.N.Y. Apr. 18, 2011) ("Indeed, where jurisdictional facts are disputed, the Court has the power and the obligation to consider matters outside the pleadings, such as affidavits, documents, and testimony, to determine whether jurisdiction exists.").  The Court will not consider these documents for any other purpose.

was two-years old, he was classified as a preschooler with a disability and "placed in a non-integrated 12:1:2 preschool class."  (*Id.* ¶ 9.)³  Plaintiffs allege that in April 2009, the District declassified Daniel at a Committee on Special Education ("CSE") meeting, terminated special education and related services, and placed Daniel in a regular classroom for kindergarten beginning in September 2009.  (*Id.* ¶ 10.)  According to Plaintiffs, the teaching style of Nalick, Daniel's kindergarten teacher, was "ineffective, inflexible, and ultimately exacerbated Daniel's difficulties" with socialization and academics.  (*Id.* ¶ 11.)  Plaintiffs claim that instead of convening a CSE to address Daniel's problems, the District "punished and suspended Daniel on a near daily basis."  (*Id.* ¶ 12.)

The Amended Complaint does not mention whether an Individualized Education Program ("IEP") was ever created for Daniel.⁴  However, the Amended Complaint does indicate

---

³ A "12:1:2" class is not explained in the Amended Complaint, but the Court assumes it refers to a class with a ratio of one teacher and two aides for every twelve students.

⁴ An IEP is the IDEA's primary mechanism for guaranteeing students with disabilities access to a "free appropriate public education."  *See* 20 U.S.C. §§ 1400(d)(1)(A), 1414(d).  An IEP is a "written statement" setting forth:  (1) "the child's present levels of academic achievement and functional performance"; (2) "measurable annual goals," both "academic and functional"; (3) "how the child's progress . . . will be measured"; (4) "the special education and related services and supplementary aids and services" to be provided the child; (5) "an explanation of the extent, if any, to which the child will not participate" in regular school classes and activities; (6) how the child will participate in required testing; (7) a "projected date for the beginning of" the child's support services and details about their "frequency, location, and duration"; and (8) a statement regarding the child's goals for and transition to life post-secondary education.  *Id.* §§ 1414(d)(1)(A)(i)(I)–(VIII).  The IEP is created and periodically reviewed and revised by "a team consisting of the child's parents, the child's regular classroom teacher, a special-education teacher, a representative of the local educational agency, and other individuals with knowledge of the child."  *G.B. ex rel. N.B. v. Tuxedo Union Free Sch. Dist.*, 751 F. Supp. 2d 552, 572 (S.D.N.Y. 2010) (citing 20 U.S.C. § 1414(d)(1)(B)).

The Court notes that the 2010-2011 IEP submitted by Defendants, which the Court considers in deciding the instant motion only to the extent it is relevant to the Court's jurisdiction, contains notes from CSE meetings held during Daniel's kindergarten year that indicate that there was in fact an IEP in place at some point during that year.  However, the

that throughout Daniel's kindergarten year, several CSE meetings were held, and that issues as to the proper classification and placement of Daniel were frequently addressed.  Plaintiffs allege that when they requested a CSE meeting on October 7, 2009, a subordinate of Schepperly indicated that a meeting could not be held until November and recommended placing Daniel in an Intensive Day Treatment ("IDT") program in the meantime.  (*Id.* ¶¶ 15-16.)  Plaintiffs refused such a placement and allege that they instead contacted the Superintendent of Schools, which resulted in a CSE meeting on October 14, 2009.  (*Id.* ¶ 17.)  Plaintiffs allege that at this meeting, Schepperly "unilaterally recommended that Daniel be classified as 'emotionally disturbed'" and insisted that Daniel should be removed from the school and placed in a segregated IDT or Board of Cooperative Educational Services ("BOCES") program.  (*Id.* ¶¶ 13, 18.)  Plaintiffs rejected both this classification and placement, maintaining that Daniel's problems were caused by Nalick's "refus[al] to accommodate Daniel's disability."  (*Id.* ¶¶ 14, 18.)

During this time period, Plaintiffs allege that Daniel was evaluated by both his developmental pediatrician, Dr. Hugh Bases ("Dr. Bases"), and, at the request of the District, a psychiatrist, Dr. Richard Hahn ("Dr. Hahn").  (*Id.* ¶¶ 19, 21.)  According to Plaintiffs, Dr. Bases concluded that although Daniel still had a speech impairment or articulation disorder and had developed "impulsive and oppositional behaviors," he "was <u>not</u> emotionally disturbed and should continue to receive services in a regular classroom with a 1:1 aide to assist him."  (*Id.* ¶¶ 19-20 (emphasis in original).)[5]  Dr. Hahn's report noted that Daniel had difficulties with

_____

Court has not been provided with this IEP and does not know what it contained.

[5] Again, the Amended Complaint makes no mention of an IEP, but presumably these alternate provisions were part of an IEP or some other action by the District to address Daniel's situation.

5

attention, focus, impulsivity, and anxiety, but, according to Plaintiffs, also did not support the emotionally disturbed classification.  (*Id.* ¶ 22.)  Plaintiffs again rejected the emotionally disturbed classification and IDT placement on November 25, 2009.  (*Id.* ¶ 23.)

Plaintiffs allege that at the next CSE meeting on December 7, 2009, the District continued to insist that Daniel was emotionally disturbed and should be placed in a segregated BOCES program.  (*Id.* ¶¶ 25-26.)  According to Plaintiffs, the District maintained this position despite a "lack of any support for its recommendation" and evidence presented at the meeting that Daniel's negative behavior in the classroom was caused by being required to undertake occupational therapy ("OT") tasks such as handwriting.  (*Id.*)[6]  Plaintiffs allege that when the CSE next convened on December 14, 2009:  (1) the principal of the proposed BOCES program stated that he had agreed to conduct an intake of Daniel but had not determined whether the program was appropriate for him; (2) Nalick stated that she had spoken with Daniel's preschool teacher who indicated that Daniel had experienced similar difficulties with transitioning and tantrums at the beginning of preschool; and (3) Dr. Bases reiterated that Daniel could continue in his current setting with the "provision of necessary related services in speech and OT" and a 1:1 aide to assist him with transition issues.  (*Id.* ¶¶ 27-31.)  However, Plaintiffs claim that despite this evidence that Daniel simply "required more support to assist him in succeeding in a mainstream environment, [] Schepperly continued to press for Daniel's classification as 'Emotionally Disturbed,' his removal from his general education class and his placement in an out-of-district segregated class."  (*Id.* ¶ 32.)  Plaintiffs were accompanied at this meeting by their attorney, Mary Jo Whateley, who indicated that she would "invoke due process."  (2010-2011

---

[6] Plaintiffs do not explain the connection between these OT tasks and Daniel's disability.

IEP at 2-3.)[7]  However, there is no evidence that Plaintiffs did "invoke due process" at this, or any other, time and Plaintiffs have not alleged otherwise.[8]

On January 7, 2010, the school psychologist convened an informal meeting between Mrs. Baldessarre and several school staff members "in an attempt to resolve Daniel's in-school behaviors."  (Am. Compl. ¶ 33.)  Plaintiffs allege that at this meeting, when Director of Special Education Eric Eulau ("Eulau") suggested that Nalick "could modify her responses to Daniel's behavior and not remove him from the classroom," Nalick purportedly "stated openly and unequivocally that she would <u>not</u> modify her teaching, 'even for one child with a disability.'" (*Id.* ¶¶ 34-35 (emphasis in original).)   Plaintiffs further claim that the next day, Eulau contacted Mrs. Baldessarre to suggest that Plaintiffs consider changing Daniel's class "because of the staff's 'apparent taint against Daniel'" and, that at a meeting the following week, the school principal allegedly acknowledged that "Nalick was not 'the right match' for Daniel."  (*Id.* ¶¶ 36-37.)  According to Plaintiffs, they then agreed to remove Daniel from Nalick's class and place him in a different kindergarten class in early February 2010 because the District — rather than addressing Nalick's alleged "refusal to accommodate Daniel's disability" through training, supervision, or reprimand — told Plaintiffs that removal from the class was their only option. (*Id.* ¶¶ 38-39.)

_____

[7] As previously mentioned, Defendants submitted Daniel's 2010-2011 IEP with their motion.  The 2010-2011 IEP contains minutes from the CSE meetings that occurred during the 2009-2010 school year and mentions Ms. Whateley's attendance and statement at the December 14, 2009 meeting.

[8] The Court assumes that references that Ms. Whateley would "invoke due process" meant that she would seek a hearing before an Individual Hearing Officer ("IHO"), as permitted under New York law.  *See Cave v. E. Meadow Union Free Sch. Dist.*, 514 F.3d 240, 245 (2d Cir. 2008) (describing IHO process); *M.M. ex rel. J.M. v. N.Y.C. Dep't of Educ.*, No. 09-CV-5236, 2010 WL 2985477, at *2 (S.D.N.Y. July 27, 2010) (same).

Plaintiffs allege that on March 22, 2010, the District tried to "illegally" use IDEA

procedures to remove Daniel from the school to an interim alternative education setting, despite

evidence that he had improved in the new class and that his problematic behavior had decreased.

(*Id.* ¶ 40.)[9]  The Amended Complaint is not entirely clear, but it appears that an impartial hearing

was scheduled to address this potential removal.  Defendants claim that the District "initiated an

expedited impartial due process hearing under IDEA to seek [Daniel's] temporary removal"

from the school.  (Answer to Am. Compl. ¶ 40.)  Plaintiffs do not allege any facts that contradict

Defendants' contention.  Instead, Plaintiffs allege that at a resolution meeting on April 9, 2010,[10]

the District and Plaintiffs agreed to postpone the scheduled hearing in order to allow time to see

if Daniel's behavior continued to improve in the new class.  (Am. Compl. ¶ 41.)   In fact,

Daniel's behavior did improve, which led the District to withdraw its due process complaint.

(*Id.* ¶ 42.)  Defendants also assert that Plaintiffs never requested an impartial hearing for any

issue.  (Eulau Aff. ¶ 6.)

Plaintiffs allege that prior to entering kindergarten, Daniel looked forward to school and

was very interested in learning; however, while in Nalick's class, Daniel became sad and

withdrawn, developed a negative view of himself, and now hates school.  (Am. Compl. ¶¶ 43-

---

[9] Plaintiffs claim that the District sought to remove Daniel "in yet another effort to discriminate against Daniel and retaliate against Daniel for filing this action."  (Am. Compl. ¶ 40.)  However, although Plaintiffs' initial Complaint was dated March 8, 2010, it was not filed until March 23, 2010 (Dkt. No. 1), and Defendants were not served until March 30, 2010, (Dkt. Nos. 3-5).  Therefore, without further explanation, it is unclear how the District's conduct on March 22, 2010, possibly could be in retaliation for a lawsuit that was not yet filed or served.

[10] The Amended Complaint actually indicates that the resolution hearing occurred on April 9, 2009, and that the District's attempt to remove Daniel occurred on March 22, 2009 (Am. Compl. ¶¶ 40-41); however, it is clear from the rest of the timeline that these events happened in 2010, and that these references are typographical errors.

46.)  Plaintiffs assert that Daniel's statutory rights were violated because Schepperly was aware of Nalick's "ongoing discrimination against Daniel" but was "deliberately indifferent and intentionally hostile" in failing to rectify the discrimination.  (*Id.* ¶¶ 47-48.)  According to Plaintiffs, these alleged violations "deprived Daniel of educational opportunities available to other non-disabled students and to which he is entitled by law" and have isolated, distressed, and humiliated Daniel and Plaintiffs.  (*Id.* ¶¶ 49-50.)

B.  Procedural History

Plaintiffs filed their initial Complaint in this action on March 23, 2010.  (Dkt. No. 1.)  In their Complaint, Plaintiffs brought causes of action pursuant to the IDEA, the Rehabilitation Act, and the ADA — based on the same set of facts for each claim — and sought compensatory damages, compensatory education, an injunction prohibiting Defendants from discriminating against Daniel because of his disability, and attorneys' fees and costs.  (Compl. ¶¶ 47-49; *id.* § V.)  After the Parties appeared before the Court at a pre-motion conference on July 14, 2010, Plaintiffs submitted an Amended Complaint dated July 28, 2010.  (Dkt. No. 18.)[11]  The Amended Complaint only contains causes of action pursuant to the Rehabilitation Act and the ADA; Plaintiffs removed their IDEA cause of action.  (Am. Compl. ¶¶ 52-68.)  In their Amended Complaint, Plaintiffs seek an award of compensatory damages, attorneys' fees and costs, and to enjoin Defendants from engaging in discriminatory practices, including an order that Nalick

---

[11] In reviewing the instant motion, the Court noticed that although Plaintiffs had submitted a hard copy of the Amended Complaint to Defendants and the Court (and Defendants answered this amended pleading), Plaintiffs had not actually filed their Amended Complaint. After the Court alerted Plaintiffs to this issue, Plaintiffs filed the Amended Complaint on May 9, 2011.  (Dkt. No. 18.)

receive education-related training and an order that Nalick and Schepperly both receive anti-discrimination and/or diversity training.  (*Id.* § V.)

Defendants submitted an Answer to the Amended Complaint dated August 16, 2010. (Dkt. No. 19.)[12]  In their Answer to the Amended Complaint, Defendants assert that the Court lacks subject matter jurisdiction because Plaintiffs failed to either exhaust their administrative remedies under the IDEA or demonstrate that exhaustion would be futile (Answer to Am. Compl. ¶ 5), and also assert, as an affirmative defense, that Plaintiffs' claims are barred by this failure to exhaust, (*id.* ¶¶ 70-72).  On October 22, 2010, Defendants filed the instant motion for summary judgment, which as already explained, the Court is treating as a motion to dismiss for lack of subject matter jurisidction or, alternatively, as a motion for judgment on the pleadings. (Dkt. No. 14.)  The Court held oral argument on Defendants' motion on May 18, 2011.  (Dkt. No. 16.)

## II.  Discussion

### A.  Standard of Review

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it."  *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).  When a defendant moves to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction, and also moves to dismiss on other grounds such as Rule 12(b)(6) for failure to state a claim upon which relief can be granted, the Court must consider the Rule 12(b)(1) motion first.  *See Rhulen Agency, Inc. v. Ala. Ins. Guar. Ass'n*, 896

---

[12] The Answer to the Amended Complaint also was not filed at the time Defendants submitted it to Plaintiffs.  Per the Court's instructions, Defendants filed their Answer to the Amended Complaint on May 10, 2011.  (Dkt. No. 19.)

F.2d 674, 678 (2d Cir. 1990); *Adamu v. Pfizer, Inc.*, 399 F. Supp. 2d 495, 500 (S.D.N.Y. 2005).

In reviewing a motion to dismiss under Rule 12(b)(1), the Court "must accept as true all material

factual allegations in the complaint, but [it is] not to draw inferences from the complaint

favorable to Plaintiffs." *J.S. ex rel. N.S. v. Attica Cent. Sch.*, 386 F.3d 107, 110 (2d Cir. 2004).

When considering a motion to dismiss, courts are generally limited to examining the sufficiency

of the pleadings but, where a party challenges the court's subject matter jurisdiction, "the court

may resolve disputed jurisdictional fact issues by reference to evidence outside the pleadings."

*Flores v. S. Peru Copper Corp.*, 414 F.3d 233, 255 n.30 (2d Cir. 2003) (internal quotation marks

omitted); *see also Picture Patents, LLC v. Aeropostale, Inc.*, No. 07-CV-5567, 2011 WL

1496347, at *4 (S.D.N.Y. Apr. 18, 2011) (where there is a question as to the Court's subject

matter jurisdiction, "the Court has the power and the obligation to consider matters outside the

pleadings, such as affidavits, documents, and testimony, to determine whether jurisdiction

exists."). The party asserting jurisdiction, in this case Plaintiffs, has the burden of showing by a

preponderance of the evidence that the Court has jurisdiction. *See APWU v. Potter*, 343 F.3d

619, 623 (2d Cir. 2003).

Rule 12(c) provides that "[a]fter the pleadings are closed — but early enough not to delay

trial — a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). The Court

applies the same standard of review to a Rule 12(c) motion as it does to a motion to dismiss for

failure to state a claim upon which relief can be granted under Rule 12(b)(6). *See Bank of N.Y. v.

First Millennium, Inc.*, 607 F.3d 905, 922 (2d Cir. 2010). "On a Rule 12(b)(6) motion to dismiss

a complaint, the court must accept a plaintiff's factual allegations as true and draw all reasonable

inferences in [the plaintiff's] favor." *Gonzalez v. Caballero*, 572 F. Supp. 2d 463, 466 (S.D.N.Y.

2008); *see also DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 110-11 (2d Cir. 2010) (same).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration, citations, and internal quotation marks omitted). Instead, "[f]actual allegations must be enough to raise a right to relief above the speculative level," *id.*, and "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563. Plaintiffs must allege "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. If plaintiffs "have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." *Id.* "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged — but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009) (second alteration in original) (quoting Fed. R. Civ. P. 8(a)(2)).

In considering a Rule 12(c) motion, "a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco*, 622 F.3d at 111 (reviewing a Rule 12(b)(6) dismissal); *see also Dingle v. City of New York*, 728 F. Supp. 2d 332, 343 (S.D.N.Y. 2010) (Rule 12(c) motion); *Bohmer v. New York*, 684 F. Supp. 2d 357, 360 (S.D.N.Y. 2010) (same). "Even where a document is not incorporated by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effect, which renders the document integral to the complaint." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (internal quotation marks omitted); *see also Bayer Schera Pharma AG v. Sandoz, Inc.*, 741 F. Supp. 2d 541, 545 n.4 (S.D.N.Y. 2010) (noting the same, in the context of a Rule 12(c) motion). Finally,

12

the Court may also look to "matters of which judicial notice may be taken," *H & H Acquisition Corp. v. Fin. Intranet Holdings*, 669 F. Supp. 2d 351, 357 (S.D.N.Y. 2009) (quoting *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993)), "even if the corresponding documents are not attached to[] or incorporated by reference in the complaint," *Ackerman v. Local Union 363*, 423 F. Supp. 2d 125, 127 (S.D.N.Y. 2006).

Here, Defendants have submitted two documents outside the pleadings.  First, Defendants submitted the Eulau Affidavit.  The statement in ¶ 6 of the Eulau Affidavit that Plaintiffs never requested an impartial hearing — as Defendants claim Plaintiffs were required to do for exhaustion purposes — addresses a jurisdictional fact; accordingly, the Court is allowed to consider it, and has cited it in the fact section above.  Importantly, Plaintiffs allege no facts to contradict this portion of the Eulau Affidavit.  However, there is no basis that would allow the Court to consider the rest of the statements in the Eulau Affidavit.  Second, Defendants submitted Daniel's 2010-2011 IEP.  This IEP, which was developed on June 9, 2010, for the 2010-2011 school year, is irrelevant because Plaintiffs assert claims solely based on Defendants' treatment of Daniel during the 2009-2010 school year.  Defendants have not submitted an IEP for the 2009-2010 school year and, even if they had, the Court would be unable to consider it, because the Amended Complaint does not mention an IEP or its terms and conditions; accordingly, it neither would be incorporated by reference nor integral to the Amended Complaint.  The 2010-2011 IEP does include minutes of the CSE meetings that occurred during the 2009-2010 school year.  However, except for the statement by Plaintiffs' counsel concerning due process — which is relevant to the Court's determination of subject matter jurisdiction — these minutes have not been considered because, although the Amended Complaint mentions these meetings, it does not refer to any documents.

13

### B.  Exhaustion

Defendants argue that even though the Amended Complaint does not include an IDEA cause of action, all of Plaintiffs' claims arise out of issues relating to Daniel's education as a child classified with a disability and, thus, could have been addressed under the IDEA.  (Defs.' Mem. of Law in Supp. of Mot. for Summ. J. Pursuant to Rule 56 ("Defs.' Mem.") 5.) Accordingly, Defendants argue that Plaintiffs were required to exhaust administrative remedies under the IDEA.  (*Id.*)  Plaintiffs have not asserted that they did exhaust these remedies, including a hearing before an Independent Hearing Officer ("IHO").  Instead, Plaintiffs allege that exhaustion does not apply to their claims because "the claims relate to discrimination against Daniel on the basis of his disability, not the [D]istrict's failure to develop an appropriate [IEP]," and the state administrative process cannot provide Plaintiffs with adequate relief.  (Am. Compl. ¶ 51.)  In their papers opposing Defendants' motion, Plaintiffs assert that they have alleged facts that constitute an exception to the exhaustion doctrine, maintaining that they were not required to exhaust administrative remedies because doing so would have been futile in light of Plaintiffs' claims of intentional discrimination and request for monetary damages.  (Pl.'s Mem. of Law in Opp'n to Defs.' Mot. ("Pls.' Mem.") 2, 7-10.)

### 1.  The IDEA's Exhaustion Requirement

"The IDEA's central mandate is to provide disabled students with a 'free appropriate public education' ["FAPE"] in the least restrictive environment suitable for their needs." *Cave v. E. Meadow Union Free Sch. Dist.*, 514 F.3d 240, 245 (2d Cir. 2008).  As noted above, the IDEA effectuates this purpose via an IEP, developed in collaboration among the student's parents, teachers, and school district representatives. *See Honig v. Doe*, 484 U.S. 305, 311 (1988) (describing the IEP as Congress's intended "centerpiece of the statute's education

14

delivery system for disabled children").  "Concerned that parental input into the creation of the IEP would not be sufficient to safeguard a child's right to a free and appropriate education, Congress also included within the IDEA procedural safeguards that enable parents and students to challenge the local educational agency's decisions."  *Murphy v. Arlington Cent. Sch. Dist. Bd. of Educ.*, 297 F.3d 195, 197 (2d Cir. 2002) (citing 20 U.S.C. § 1415).  "Foremost among the procedural safeguards is the right to seek an administrative impartial due process hearing."  *M.M. ex rel. J.M. v. N.Y.C. Dep't of Educ.*, No. 09-CV-5236, 2010 WL 2985477, at *2 (S.D.N.Y. July 27, 2010) (citation and internal quotation marks omitted).  Thus, each state complies with the IDEA's safeguard provision by establishing procedures whereby parents may, among other things, present a complaint "with respect to any matter relating to the identification, evaluation, or educational placement of the[ir] child, or the provision of a free appropriate public education to [their] child."  20 U.S.C. § 1415(b)(6)(A).  New York's administrative review system involves two steps if a parent brings such a complaint:  (1) a review of the matter by an impartial hearing officer, *see* N.Y. Educ. Law § 4404(1); and (2) a possible appeal to a state review officer, who may modify any determination made by the impartial hearing officer, *see id.* § 4404(2); *see also* 20 U.S.C. §§ 1415(f), (g) (setting forth requirements of impartial due process hearing and review by state educational agency); *Pape v. Bd. of Educ.*, No. 07-CV-8828, 2009 WL 3151200, at *1 n.1 (S.D.N.Y. Sept. 29, 2009) (describing these requirements).

"Only after exhaustion of these procedures has an aggrieved party the right to file a suit in a federal or state court."  *Cave*, 514 F.3d at 245; *see also* 20 U.S.C. § 1415(i)(2)(A).  Crucially, the IDEA subjects not only an IDEA cause of action, but *any other* federal statutory claim seeking relief that would be available under the IDEA to the same administrative exhaustion requirement.  Specifically, the IDEA provides:

15

> Nothing in this chapter shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, the Americans with Disabilities Act of 1990 . . . , title V of the Rehabilitation Act of 1973 . . . , or other Federal laws protecting the rights of children with disabilities, except that before the filing of a civil action under such laws seeking relief that is also available under this subchapter, the procedures under subsections (f) and (g) [providing for impartial hearing and appeal to the state education agency, respectively] shall be exhausted to the same extent as would be required had the action been brought under this subchapter.

20 U.S.C. § 1415(l); *see also Cave*, 514 F.3d at 246 ("[C]omplainants must overcome this significant procedural hurdle not only when they wish to file a suit under the IDEA itself, but also whenever they assert claims for relief *available* under the IDEA, regardless of the statutory basis of their complaint." (emphasis in original)); *Polera v. Bd. of Educ.*, 288 F.3d 478, 481, 483 (2d Cir. 2002) ("[P]otential plaintiffs with grievances related to the education of disabled children generally must exhaust their administrative remedies before filing suit in federal court, even if their claims are formulated under a statute other than the IDEA (such as the ADA or the Rehabilitation Act)."); *Gardner v. Uniondale Pub. Sch. Dist.*, No. 08-CV-847, 2008 WL 4682442, at *8 (E.D.N.Y. Oct. 21, 2008) ("[W]here the issues raised in the litigation are those the IDEA is intended to remedy, the exhaustion requirement applies regardless of the remedy sought by plaintiff or the additional causes of actions asserted under other federal statutes.").

The Second Circuit has long held that failure by plaintiffs to exhaust the IDEA's administrative remedies deprives the court of subject matter jurisdiction over their claims, including claims brought under the other federal statutes referred to in § 1415(l) if those claims seek relief available under the IDEA. *See Cave*, 514 F.3d at 243, 245 & n.2 (noting that district court lacked subject matter jurisdiction over ADA, Rehabilitation Act, and § 1983 claims due to plaintiffs' failure to exhaust administrative remedies); *Polera*, 288 F.3d at 480, 490-91 (holding that district court lacked subject matter jurisdiction over ADA and Rehabilitation Act claims as

16

plaintiff did not exhaust administrative remedies); *see also Hope v. Cortines*, 872 F. Supp. 14, 15-16 (E.D.N.Y. 1995) (holding that court lacked subject matter jurisdiction over claims under ADA, § 1983, and Civil Rights Act of 1964 that plaintiff failed to exhaust), *aff'd as to ADA claim*, 69 F.3d 687, 688 (2d Cir. 1995).[13]  As explained more fully below, "relief that is also

---

[13] The Court notes that the Second Circuit has, in recent years, issued a number of decisions that arguably call into question this previously clear rule.  *See, e.g.*, *Levine v. Greece Cent. Sch. Dist.*, 353 F. App'x 461, 463 (2d Cir. 2009) (summary order) (noting dispute regarding whether exhaustion requirement is "jurisdictional" or "merely an affirmative defense that must be raised by the defendant or else is subject to waiver or forfeiture" but declining to decide the question); *Coleman v. Newburgh Enlarged City Sch. Dist.*, 503 F.3d 198, 203-04 (2d Cir. 2007) (noting that Supreme Court decisions requiring careful distinction between "jurisdictional rules and mandatory claims-processing rules" might call into question whether IDEA's exhaustion requirement is jurisdictional, *id.* at 203, but declining to decide the question); *id.* at 209 & n.1 (Straub, J., concurring) (contending that recent Supreme Court cases do not alter the jurisdictional nature of the IDEA's exhaustion requirement as applied to IDEA claims, but suggesting that 20 U.S.C. § 1415(l) may not be a jurisdictional bar to asserting claims under other federal statutes); *see also Paese v. Hartford Life & Accident Ins. Co.*, 449 F.3d 435, 444 n.2 (2d Cir. 2006) (noting that the Second Circuit has "yet to reach a clear conclusion on th[e] question" of whether the failure to exhaust administrative remedies under the IDEA is an affirmative defense or a jurisdictional bar); *Handberry v. Thompson*, 436 F.3d 52, 60 (2d Cir. 2006) ("We have not yet ruled on whether the IDEA's exhaustion requirements are subject to waiver.").  The Supreme Court has recently decided additional cases discussing the distinction between "jurisdictional conditions" to the bringing of a suit and "claim-processing rules or elements of a cause of action."  *Reed Elsevier, Inc. v. Muchnick*, 130 S. Ct. 1237, 1243-44 (2010); *see also id.* at 1247-48 (holding that the Copyright Act's registration requirement, 17 U.S.C. § 411(a), is not a jurisdictional prerequisite to suit under the Act); *see also Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514-16 (2006) (holding that Title VII's definition of an "employer," which includes only those entities having "fifteen or more employees," 42 U.S.C. § 2000e(b), is not jurisdictional but an element of a Title VII cause of action).  The Second Circuit has not had occasion to address its IDEA exhaustion cases in light of these new rulings.

This Court, however, is bound by existing Second Circuit precedent.  *See United States v. Emmenegger*, 329 F. Supp. 2d 416, 436 (S.D.N.Y. 2004) ("[T]his Court is obliged to follow [Second Circuit] precedent until it is overruled by a higher court or until Supreme Court precedent renders it untenable.").  Some district courts in this Circuit have continued to refer to the IDEA exhaustion requirements as jurisdictional, even after the Circuit's more recent cases on the subject and even after *Reed Elsevier* and *Arbaugh* (though usually without much discussion).  *See, e.g.*, *T.K. ex rel. L.K. v. N.Y.C. Dep't of Educ.*, No. 10-CV-752, 2011 WL 1549243, at *20 (E.D.N.Y. Apr. 25, 2011); *Filaski v. Northport-E. Northport Union Free Sch. Dist.*, No. 06-CV-1019, 2011 WL 1260156, at *2 (E.D.N.Y. Mar. 30, 2011); *TC ex rel. DC v. Valley Cent. Sch. Dist.*, No. 09-CV-9036, 2011 WL 1345181, at *18 (S.D.N.Y. Mar. 30, 2011); *French v. N.Y.*

available" under the IDEA has been broadly construed "'to mean relief for the events, condition, or consequences of which the person complains, not necessarily relief of the kind the person prefers.'"  *Polera*, 288 F.3d at 483, 488 (quoting *Charlie F. v. Bd. of Educ.*, 98 F.3d 989, 992 (7th Cir. 1996)).

The Second Circuit has described the purposes served by the IDEA exhaustion requirement as follows:

> Exhaustion of administrative remedies is required under the IDEA so that disputes related to the education of disabled children are first analyzed by administrators with expertise in the area who can promptly resolve grievances. Exhaustion of the administrative process allows for the exercise of discretion and educational expertise by state and local agencies, affords full exploration of technical educational issues, furthers development of a complete factual record, and promotes judicial efficiency by giving these agencies the first opportunity to correct shortcomings in their educational programs for disabled children.  If the administrative process is not successful at resolving the dispute, it will at least have produced a helpful record because administrators versed in the relevant issues were able to probe and illuminate those issues for the federal court.

---

*State Dep't of Educ.*, No. 04-CV-434, 2010 WL 3909163, at *5 (N.D.N.Y. Sept. 30, 2010); *Bryant v. N.Y. State Educ. Dep't*, No. 10-CV-36, 2010 WL 3418424, at *2 (N.D.N.Y. Aug. 26, 2010); *M.M.*, 2010 WL 2985477, at *7 n.8.  Other courts treat exhaustion as a requirement of a statutory claim seeking relief available under the IDEA, not as an issue related to subject matter jurisdiction, and therefore subject to waiver.  *See, e.g.*, *Kalliope R. ex rel. Irene D. v. N.Y. State Dep't of Educ.*, No. 09-CV-1718, 2010 WL 2243278, at *4 n.2 (E.D.N.Y. June 1, 2010) ("Here, the parties do not appear to dispute that the exhaustion issue is properly raised in a Rule 12(b)(6) — as opposed to Rule 12(b)(1) — motion." (citing *Coleman*, 503 F.3d at 203-04)).

In any event, the distinction does not matter here, because Defendants have in fact asserted the exhaustion requirement as an affirmative defense, and the IDEA makes clear that exhaustion of administrative remedies is an absolute prerequisite to bringing suit under any federal statute for relief available under the IDEA.  *See Coleman*, 503 F.3d at 204 ("[W]e are not forced to decide whether our precedent . . . remains good law . . . because there can be no claim of waiver or forfeiture here."); *Levine*, 353 F. App'x at 463 (same).  In addition, the Court notes that based on the existing Second Circuit precedent that failure to exhaust deprives the Court of subject matter jurisdiction, the Court has considered matters outside of the pleadings, as it is allowed to do in determining jurisdiction.  However, even assuming, arguendo, that exhaustion is an affirmative defense and that only the pleadings may be considered, the Court would still conclude that Plaintiffs did not exhaust their administrative remedies; indeed, Plaintiffs have not attempted to assert otherwise, and instead only argue that they were not required to exhaust.

*J.S.*, 386 F.3d at 112-13 (citations and internal quotation marks omitted).  Plaintiffs should not be excused from the exhaustion requirement when "administrative review would further the goals of developing facts, making use of available expertise, and promoting efficiency."  *Id.* at 113; *see also Gardner*, 2008 WL 4682442, at *7 (same).

However, the IDEA's exhaustion requirement "does not apply 'in situations in which exhaustion would be futile.'"  *Coleman v. Newburgh Enlarged City Sch. Dist.*, 503 F.3d 198, 205 (2d Cir. 2007) (quoting *Polera*, 288 F.3d at 488).  Plaintiffs bear the burden of establishing that the futility exception applies.  *See J.S.*, 386 F.3d at 112.  "To show futility, a plaintiff must demonstrate that adequate remedies are not reasonably available or that the wrongs alleged could not or would not have been corrected by resort to the administrative hearing process."  *Coleman*, 503 F.3d at 205 (internal quotation marks omitted).  These include circumstances, among others, in which parents were not notified of the available due process remedies, *see Weixel v. Bd. of Educ.*, 287 F.3d 138, 149 (2d Cir. 2002), the local or state education agency itself was acting contrary to law, *see Heldman ex rel. T.H. v. Sobol*, 962 F.2d 148, 159 (2d Cir. 1992), or the defendant is alleged to have committed a "systemic" violation of the IDEA, *Cave*, 514 F.3d at 249; *see also Murphy*, 297 F.3d at 199 ("Congress specified that exhaustion is not necessary if (1) it would be futile to resort to the IDEA's due process procedures; (2) an agency has adopted a policy or pursued a practice of general applicability that is contrary to the law; or (3) it is improbable that adequate relief can be obtained by pursuing administrative remedies.").[14]

---

[14] The futility exception also applies narrowly to cases in which the complaint alleges that "a school has failed to implement services that were specified or otherwise clearly stated in an IEP."  *Polera*, 288 F.3d at 489.  As Plaintiffs have not alleged that Daniel had an IEP, and the Court has not been provided with Daniel's IEP for the 2009-2010 school year, this exception is plainly inapplicable to the instant case.

2.  Application of the Exhaustion Requirement

Here, Plaintiffs allege that Defendants' conduct violated the ADA and the Rehabilitation Act.  Although the Amended Complaint does not contain an IDEA claim, the exhaustion requirement will still apply if "the issues raised in the litigation are those the IDEA is intended to remedy," *Gardner*, 2008 WL 4682442, at *8, and if their claims "seek[] relief that is also available under" the IDEA, 20 U.S.C. § 1415(l).  Accordingly, the Court must first determine whether the IDEA addresses the types of issues raised by Plaintiffs and whether Plaintiffs seek relief that is available under the IDEA.  If both of those questions are answered affirmatively, the Court must then consider whether any exception to the exhaustion requirement applies.

a. The IDEA Addresses the Issues Raised by Plaintiffs

Plaintiffs' allegations can be summarized as follows:  Daniel, who had a diagnosed disability and had been placed in a non-integrated preschool, was placed in an integrated kindergarten class; Plaintiffs were dissatisfied with the kindergarten teacher and sought a CSE meeting; Defendants delayed convening a CSE and insisted on an emotionally disturbed classification and a proposed segregated placement outside the district that allegedly were improper and unsupported; Nalick persisted in mistreating Daniel by not properly accommodating his disability; Plaintiffs were forced to switch Daniel's class because of Nalick's behavior; and Defendants sought to illegally use the IDEA emergency removal procedure to remove Daniel from his general education placement, although Defendants ultimately withdrew the request and Daniel was not removed.  These claims all relate to the identification, evaluation, or educational placement of Daniel, or his treatment by his teacher because of his disability, and therefore these claims all invoke Daniel's right to a free appropriate public education.

20

Accordingly, these claims are squarely within the ambit of the IDEA.  In fact, in their initial Complaint, Plaintiffs had included an IDEA cause of action based on this same set of facts.

Plaintiffs allege that they were not required to exhaust because their claims relate to discrimination against Daniel on the basis of his disability.  (Am. Compl. ¶ 51.)   Additionally, Plaintiffs' Memorandum of Law alleges that exhaustion was not necessary because their Amended Complaint alleges facts sufficient to state claims of discrimination under the Rehabilitation Act and the ADA, for which they are requesting monetary damages.  (Pl.'s Mem. 8-10.)  However, Plaintiffs' Memorandum of Law confirms that their claims relate specifically to Daniel's education.  (*Id.* at 10 (emphasizing that Defendants allegedly committed acts of intentional discrimination and deliberate indifference "simply because his teacher, defendant Nalick, *was unwilling to accommodate [Daniel's] disability*." (emphasis added)).)  Because all of Plaintiffs' claims of discrimination relate to the interplay between Daniel's disability and his education, whether the Amended Complaint adequately alleges facts sufficient to state a claim under these other statutes is entirely irrelevant.  *See Cave*, 514 F.3d at 247 (rejecting plaintiffs' argument that their claim was for unlawful discrimination and not a violation of the IDEA by failing to provide the child with a FAPE, because the discrimination claims all could have been addressed within the framework of the IDEA); *Filaski v. Northport-E. Northport Union Free Sch. Dist.*, No. 06-CV-1019, 2011 WL 1260156, at *3 (E.D.N.Y. Mar. 30, 2011) ("All of the claims in the Amended Complaint relate to the education of a disabled child and [p]laintiff was therefore required to exhaust her administrative remedies prior to initiating a federal lawsuit." (citation and internal quotation marks omitted)); *Wang v. Williamsville Cent. Sch. Dist.*, No. 08-CV-575, 2010 WL 1630466, at *7 (W.D.N.Y. Apr. 21, 2010) ("[A]llegations that a district was motivated by discrimination to violate the IDEA do not excuse exhaustion."); *Karlen ex rel. J.K.*

21

*v. Westport Bd. of Educ.*, 638 F. Supp. 2d 293, 299-300 (D. Conn. 2009) (finding that although plaintiffs argued that they did not need to exhaust because they were not seeking relief under, or alleging a violation of, the IDEA, plaintiffs could have challenged several of the acts in the complaint using the IDEA administrative process, and thus were required to exhaust those claims, "irrespective of whether the alleged conduct was caused by racial discrimination or animus"); *DiStiso v. Town of Wolcott*, No. 05-CV-1910, 2006 WL 3355174, at *5 (D. Conn. Nov. 17, 2006) ("To the extent the complaint can be construed to allege claims under the IDEA, even though such claims are disavowed by [p]laintiff or cloaked in legal theories distinct from the IDEA, those claims are dismissed for lack of subject matter jurisdiction.").

### b.  The Relief Plaintiffs Seek is Available under the IDEA

Plaintiffs have requested monetary damages, a type of relief that is not available under the IDEA.[15]  As the Second Circuit has explained, "[t]he availability of damages [] would undercut the IDEA's carefully structured procedure for administrative remedies, a mechanism that encourages parents to seek relief at the time that a deficiency occurs and that allows the educational system to bring its expertise to bear in correcting its own mistakes." *Polera*, 288 F.3d at 486.  However, the Second Circuit has also made quite clear that plaintiffs may not "'sidestep the exhaustion requirement of the IDEA'" merely by requesting damages in their lawsuit.  *Cave*, 514 F.3d at 246 (quoting *Polera*, 288 F.3d at 488); *see also id.* at 247 ("[A]

---

[15] In their Prayer for Relief, Plaintiffs also request that the Court enjoin defendants from engaging in discriminatory practices and order that Nalick and Schepperly receive training, as well as award Plaintiffs attorneys' fees and costs.  (Am. Compl. § V.)  These types of relief are available under the IDEA.  *See* 20 U.S.C. § 1415(i)(3)(B) (courts may award attorneys' fees and costs to a prevailing party in a proceeding under the IDEA); *Polera*, 288 F.3d at 486 (stating that claims for declaratory and injunctive relief and attorneys' fees "appear[ed] to be available under the IDEA").

disabled student who claims deficiencies in her educational program may not bypass the IDEA's administrative exhaustion rule merely by claiming monetary damages. We thus decline to excuse appellants from the exhaustion requirement merely because in their suit they seek, *inter alia*, pecuniary damages, a remedy unavailable under the IDEA." (citation omitted)).

In support of their argument that they were not required to exhaust, Plaintiffs latch on to the statement by the *Polera* court that plaintiffs are "not permitted to evade the IDEA's exhaustion requirement merely by tacking on a request for money damages," 288 F.3d at 487, and argue that unlike in *Polera*, Plaintiffs here have not merely added claims for damages under non-IDEA statutory provisions to avoid exhaustion; instead, they reiterate that they have detailed "the acts of intentional discrimination and deliberate indifference exhibited by [D]efendants" that render damages appropriate. (Pl.'s Mem. 9-10.) In effect, Plaintiffs argue that *Polera* stands for the proposition that plaintiffs cannot include a "sham" claim of discrimination and request for damages to avoid exhaustion and that their case is different because they have a "real" claim for damages. Plaintiff misunderstands *Polera* and its progeny, as no case has excused the exhaustion requirement because the damages claims were viewed as a "sham."[16] Indeed, the proper inquiry in assessing whether exhaustion was required is not whether actual discrimination occurred in the classroom; instead, it is whether the administrative process could have provided Plaintiffs with adequate relief *at the time the alleged wrong occurred*.

The Seventh Circuit case of *Charlie F.*, which the Second Circuit discussed in *Polera*, is particularly instructive. In *Charlie F.*, the plaintiff requested compensatory damages under the

---

[16] In fact, although Plaintiffs attempted to distinguish *Polera* in their Memorandum of Law, at oral argument, Plaintiffs' counsel admitted that in order to successfully argue that exhaustion was not required here, the Second Circuit would have to overrule *Polera*.

ADA, the Rehabilitation Act, and other statutes, but did not assert an IDEA claim.  However, the

Seventh Circuit noted that "[t]he [IDEA] statute speaks of available relief, and what relief is

'available' does not necessarily depend on what the aggrieved party wants."  *Charlie F.*, 98 F.3d

at 991.  Instead, the court "read 'relief available' to mean relief for the events, condition, or

consequences of which the person complains, not necessarily relief of the kind the person

prefers."  *Id.* at 992.  Therefore, the court explained that parents

> cannot ignore remedies available under the IDEA and insist on those of their own
> devising; under the IDEA, educational professionals are supposed to have at least
> the first crack at formulating a plan to overcome the consequences of educational
> shortfalls.  That the educational problem has consequences outside school (for
> example, the child's self-esteem and ability to get along with peers might suffer
> when he lags behind in class) can't be enough to avoid the statutory system.

*Id.*  Or, as the Second Circuit has succinctly noted:  "Where, as here, a full remedy is available *at

the time of injury*, a disabled student claiming deficiencies in his or her education may not ignore

the administrative process, then later sue for damages."  *Polera*, 288 F.3d at 488 (emphasis

added).

    These principles are directly applicable in the present case.  Plaintiffs are correct that

they cannot now receive damages under the IDEA for the violations that allegedly occurred

during the 2009-2010 school year.  However, to the extent that Plaintiffs believed the proposed

classification and placement of Daniel were discriminatory, as was Nalick's treatment of Daniel,

Plaintiffs could have sought relief through the IDEA administrative process by seeking an

impartial hearing, as Plaintiffs' counsel threatened to do at the time.  As the Second Circuit has

noted, "[p]arents are specifically entitled to request a due process hearing in order to present

complaints as 'to any matter relating to the identification, evaluation, or educational placement

of the[ir] child, or the provision of a free appropriate public education.'"  *Cave*, 514 F.3d at 245

(quoting 20 U.S.C. § 1415(b)(6)(A)).  Thus, under the statute, Plaintiffs were permitted to seek

an impartial hearing to complain about Defendants' alleged improper actions in classifying,

placing, and educating Daniel.[17]  However, Plaintiffs chose not to attempt to contemporaneously

address the issues involving Daniel's education through the carefully-devised statutory system;

instead, they chose to file a lawsuit seeking monetary damages.  "In short, [P]laintiffs did not

seek to correct the situation by utilizing the administrative process; rather, they want to recover

monetary damages . . . without giving [] [D]efendants an opportunity to analyze and rectify the

problem through the administrative process."  *Gardner*, 2008 WL 4682442, at *1.  This they

simply cannot do given that "it is abundantly clear that, even though [P]laintiffs are [now]

seeking monetary damages, they are alleging a deprivation of educational services that is within

the province of the IDEA."  *Id.* at *8 (concluding that exhaustion was required, despite the

plaintiffs' claim that the school discriminated against the child because of his disability, because

the alleged misconduct could have been addressed under the IDEA); *see also M.M.*, 2010 WL

2985477, at *7 ("Even if the plaintiff seeks a remedy (such as monetary damages) that is

unavailable under the IDEA, the plaintiff must still exhaust administrative remedies under the

IDEA if the claim is one that seeks relief for an alleged failure to provide appropriate

educational services." (internal quotation marks omitted)); *Wang*, 2010 WL 1630466, at * 7 ("In

short, if the IDEA provides some form of relief for [p]laintiffs' complaints, it does not matter

that it does not provide all forms of relief [p]laintiffs have requested."); *Myslow v. New Milford

Sch. Dist.*, No. 03-CV-496 2006 WL 473735, at *10 (D. Conn. Feb. 28, 2006) ("[I]f the IDEA

---

[17] There also is no evidence to indicate that an IHO could not have ordered Defendants to
stop discriminating against Daniel (if it found that such discrimination had occurred) or provided
other means of ensuring that Daniel was not mistreated and otherwise received a FAPE.

administrative process offers a remedy (even if not preferred) for the ills of which a plaintiff complains, the plaintiff may not ignore the administrative process, then later sue for damages under a theory of Section 504 or ADA discrimination." (internal quotation marks omitted)).[18] Accordingly, Plaintiffs were required to exhaust their claims unless they can show that one of the recognized exceptions to the exhaustion requirements applies.

### 3. No Exception to the Futility Requirement Applies

Plaintiffs argue that the Amended Complaint "sufficiently alleges the reasons why exhaustion is not required." (Pl.'s Mem. 10.)  However, the only mention of exhaustion in the Amended Complaint is in paragraph 51, which alleges that exhaustion did not apply because the claims related to discrimination and the state administrative process could not provide adequate remedies.  (Am. Compl. ¶ 51.)  As already explained, Plaintiffs' allegations of discrimination in connection with Daniel's education are insufficient to remove their claims from the ambit of the IDEA and, accordingly, its exhaustion requirement.  In addition, as also already discussed, the fact that Plaintiffs could not have obtained monetary damages through the administrative process does not mean that the state process could not have provided other adequate remedies if properly pursued.  Plaintiffs have not claimed that any of the other recognized exceptions to the exhaustion requirement apply; however, the Court still has considered the situations where exhaustion has been found to be either futile or excused, and finds that none applies in this case.

---

[18] The Court emphasizes that this holding does not suggest that children, such as Daniel, and their parents, who claim they were discriminated against under non-IDEA statutes in an educational context, can never seek monetary damages for those discrimination claims.  Rather, these claims just first must be exhausted.  If aggrieved children and their parents try to rectify the alleged discrimination through the administrative process and at the end still are dissatisfied, they may then sue for damages under statutes such as the ADA and the Rehabilitation Act.

Plaintiffs have not alleged that they were not informed of the administrative remedies available to them and, in fact, were represented at at least one CSE meeting by counsel in this action, who raised the possibility of seeking an impartial hearing but never actually did so. (2010-2011 IEP at 3.)  Thus, Plaintiffs cannot claim they were unaware of their rights.  *Cf. Weixel*, 287 F.3d at 149 (exhaustion was excused because defendants failed to notify plaintiffs of their procedural rights under the IDEA).  In addition, Plaintiffs have not alleged that the local or state education agency "has adopted a policy or pursued a practice of general applicability that is contrary to law," *Murphy*, 297 F.3d at 199; instead, they are specifically alleging that Defendants' actions discriminated against and interfered specifically with Daniel's education alone.[19]  *See Cave*, 514 F.3d at 250 (exhaustion was not excused because the complaint involved one student and there was no allegation of either a systemic violation or a structurally tainted administrative process); *c.f. J.S.*, 386 F.3d at 114-15 (noting that where the complaint alleged that the school district repeatedly failed to timely evaluate children or provide parents with required procedural safeguards, exhaustion was futile because the alleged problems did not involve issues concerning individual children); *J.W. ex rel. S.W. v. Warren*, 528 F. Supp. 2d 282, 294-95 (S.D.N.Y. 2007) (concluding that where plaintiffs claimed that "defendants systemically failed to properly evaluate and provide services" and plaintiffs' complaints were caused by defendants' policies, "a hearing officer could not offer a remedy, and therefore it would be futile for [plaintiffs] to exhaust their administrative remedies").

---

[19] The Amended Complaint does request that the Court "[e]njoin defendants from engaging in discriminatory practices, like those listed above or any others, against Daniel and similarly situated students on the basis of his disability."  (Am. Compl. § V.)  However, the Amended Complaint contains no allegations that could remotely suggest discrimination against any student other than Daniel, or why Plaintiffs have standing to seek such relief.

Moreover, because Plaintiffs have not alleged any discrimination on the part of the State, there is no reason to think that the state administrative process would not have been able to remedy the situation.  *See Hope*, 872 F. Supp. at 17 ("Because plaintiffs allege that defendants, and not the state [committed the discrimination] of which they complain, the Court holds that the purpose of the exhaustion doctrine would be undercut by allowing plaintiffs to seek redress in this tribunal rather than affording the state (and defendants) the opportunity to rectify any errors. Hence, an exception to exhaustion is not available to plaintiffs in this case.").  And, as already discussed, Plaintiffs' argument that the administrative process cannot remedy the alleged injuries because they are seeking monetary damages for past injury is unavailing.  Accordingly, Plaintiffs have not demonstrated that at the time of the injury, the administrative process could not have provided an adequate remedy.  *Cf. Taylor v. Vt. Dep't of Educ.*, 313 F.3d 768, 772, 791 (2d Cir. 2002) (determining that exhaustion was excused where the plaintiff alleged that she was denied access to her child's educational records because it was "improbable that [the plaintiff] could have obtained relief from the administrative proceedings" because the hearing officer lacked the authority to provide access to the records); *Covington v. Knox Cnty. Sch. Sys.*, 205 F.3d 912, 917 (6th Cir. 2000) (finding that exhaustion was excused because damages would have been the only adequate remedy even at the time of the injury where school had locked a disabled student in a small, dark, unheated, unventilated cell for long periods of time as a disciplinary measure). Thus, Plaintiffs have alleged no facts from which the Court can conclude that exhaustion might be futile or excused.  Accordingly, Plaintiffs were required to exhaust their administrative remedies under the IDEA.

C.  Claims Against Individual Defendants

Defendants also argue that the claims against Schepperly and Nalick, who are sued in their official capacities, should be dismissed.  Plaintiffs seek injunctive relief against these Defendants — namely, that they receive various types of training.  (Am. Compl. § V.) Defendants assert that Plaintiffs cannot demonstrate that they are likely to be injured in the future by the conduct they are seeking to enjoin, as is required to warrant this type of relief. (Def.'s Mem. 11.)  Defendants further argue that the claims against Schepperly and Nalick are redundant to Plaintiffs' claims against the District.  (*Id.* at 12.)  Plaintiffs concede that because Nalick is no longer Daniel's teacher, he likely will not have contact with her again, and have agreed to dismiss her from the case.  (Pl.'s Mem. 10-11.)  However, Plaintiffs have maintained their request for injunctive relief against Schepperly because she continues to have control of the special education program.  (*Id.* at 11.)  Plaintiffs did not respond to Defendants' redundancy claim.  Because the Court has concluded that Plaintiffs failed to exhaust, and therefore may not pursue, their ADA and Rehabilitation claims, the Court need not address these arguments at this point.

### III.  Conclusion

Defendants' motion is granted, and Plaintiffs' Amended Complaint is dismissed without prejudice.  This dismissal is without prejudice because Plaintiffs still may seek to exhaust their claims through the administrative process.  To the extent there are additional facts that could demonstrate that exhaustion would have been futile or excused, Plaintiffs may amend

accordingly, consistent with this Opinion.  The Clerk of Court is respectfully directed to

terminate the pending motion.  (Dkt. No. 14.)

SO ORDERED.

DATED:      White Plains, New York
               June **29** , 2011

                                                  KENNETH M. KARAS
                                                  UNITED STATES DISTRICT JUDGE

Service List (by ECF):

Michael H. Sussman, Esq.
Law Offices of Sussman & Watkins
P.O. Box 1005
55 East Main Street
Goshen, NY 10924
(845) 294-3991
Fax: (845) 294-1623
Email: sussman1@frontiernet.net
*Counsel for Plaintiffs*

Mary Jo Whateley, Esq.
Legal Services of the Hudson Valley
123 Grand Street
Newburgh, NY 12550
(845) 569-9110
Fax: (845) 569-9120
Email: mwhateley@lshv.org
*Counsel for Plaintiffs*

James P. Drohan, Esq.
Donoghue, Thomas, Auslander & Drohan, LLP
2517 Route 52
Hopewell Junction, NY 12533
(845) 227-3000
Fax: (845) 227-6873
Email: jdrohan@dtad.net
*Counsel for Defendants*